UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| THOMAS CHRISTENSEN, CHRISTENSEN LAW OFFICES, LLC, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> DARWIN NATIONAL ASSURANCE COMPANY and DOES I-V, and ROE CORPORATIONS I-V, inclusive, <br><br> Defendants/Counterclaimants. | Case No. 2:13-cv-00956-APG-VCF <br><br> **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

**I.   SUMMARY**

Before the Court is defendant Darwin National Assurance Company's Motion for Summary Judgment. (Dkt. # 20). For the reasons discussed below, the motion is granted.

**II.   BACKGROUND**

This is an insurance coverage dispute arising under a professional liability policy issued by defendant Darwin National Assurance Company ("Darwin") to Plaintiff Christensen Law Offices, LLC (the "Firm"). The Firm and plaintiff Thomas Christensen ("Christensen"), a named principal, seek reimbursement of costs associated with a lawsuit brought against them, for which Darwin determined there was no coverage under the policy. Darwin moves for summary judgment arguing that the terms of the policy unambiguously exclude the lawsuit from coverage.

**A.   The Policy**

Darwin issued Lawyers Professional Liability Insurance Policy No. 0304-7356 to the Firm for the policy period of July 1, 2009 to July 1, 2010 (the "Policy"). (Dkt. # 20-2.) The Policy provides coverage, subject to certain limitations, for "all amounts in excess of the Retention . . . that an Insured becomes legally obligated to pay as Damages and Claim Expenses because of a Claim arising out of a Wrongful Act, that is first made during the Policy Period...." (*Id.* at § I.A.)

An "Insured" includes not only the named insured, but "any lawyer . . . listed in the Application, on the day the Policy Period incepts . . . but only in rendering or failing to render Legal Services on behalf of the Named Insured." (*Id.* at § II.I. and L.)

The Policy defines "Claim" to include "[a] civil proceeding in a court of law" (*id.* at § II.C.), "Damages" to mean "the monetary portion of any judgment, award, or settlement" (*id.* at § II.E.), and "Claim Expenses" to mean "reasonable fees, costs and expenses charged by attorneys retained or approved by the Insurer for a Claim brought against an Insured" (*id.* at § II.D.). Additionally, a "Wrongful Act" includes "an actual or alleged act, error or omission by an Insured, solely in the performance of or failure to perform Legal Services" (*id.* at § II.V.), where "Legal Services" encompasses "those services performed on behalf of the Named Insured for others by an Insured as a licensed lawyer in good standing, arbitrator, mediator, title agent, notary public, administrator, conservator, receiver, executor, guardian, trustee, escrow agent, or in any other fiduciary capacity, but only where such services were performed in the ordinary course of the Insured's activities as a lawyer" (*id.* at § II.K.).

The Policy also includes three relevant express limitations[1] on coverage. First, the "Business Enterprise Exclusion" bars coverage for

> any claim . . . based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving, in whole or part . . . the Insured's capacity or status as . . . an officer director, partner, trustee, shareholder, manager or employee of a business enterprise . . . or trust.

(*Id.* at § III.B.3(a).) Second, the "Trust Exclusion" precludes coverage for

> any claim . . . based on, arising out of, directly or indirectly resulting from, in consequence of, or in any other way involving, in whole or part . . . any act whatsoever of an Insured in connection with a trust or estate when an Insured is a beneficiary or distributee of the trust or estate.

---

[1] Defendant's Counterclaim asserts other exclusions within the policy bar coverage. However, as those exclusions are not raised in the Motion for Summary Judgment, the Court does not address them.

2

(*Id.* at § III.B.2) Finally, the "Investment Advice Exclusion" provides that the Policy does not apply to

> any claim . . . based on, arising out of, directly or indirectly resulting from, in consequence of, or in any other way involving, in whole or part . . . the alleged rendering of investment advice, including advice given by any Insured to make any investment or to refrain from doing so.

(*Id.* at § III.B.5.)

### B. The Underlying Lawsuit

On November 24, 2009, Henry Vincent Trading & Consulting, LLC ("HVTC") and the Henry Vincent Revocable Trust Dated December 5, 1987 (the "HV Trust") (collectively, the "HV Plaintiffs") filed a complaint (the "HV Complaint") in Nevada state court against Christensen, the Firm, and Christensen's Family Trust (the "TFC Trust") for malpractice and breach of professional ethics, breach of fiduciary duty, fraud and intentional misrepresentation, negligent misrepresentation, rescission of membership purchase agreement, unjust enrichment, breach of the covenant of good faith and fair dealing, and fraudulent inducement. (Dkt. # 20-3.) The HV Plaintiffs' claims were based on allegations that, while representing HVTC in an eminent domain dispute, Christensen convinced Henry Vincent, the principal of HVTC, to sell 50% of the Membership Units in HVTC to the TFC Trust, of which Christensen was the trustee and Christensen and his family members were beneficiaries. (*Id.* at ¶¶ 14-15.) According to the HV Complaint, the decisions whether to sell and the price at which to sell were made in reliance on Christensen's knowingly false valuation of HVTC's main asset—the piece of property subject to the eminent domain dispute. (*Id.* at ¶¶ 14-20, 23-24.) The TFC Trust acquired the 50% stake in HVTC for $1.25 million, after which the property was allegedly sold for $10 million, resulting in a large windfall to the TFC Trust. (*Id.* at ¶ 30.) Additionally, due to the structure of the acquisition and HVTC's operating agreement, the TFC Trust allegedly stood to obtain 100% ownership of HVTC upon Mr. Vincent's death. (*Id.* at ¶¶ 25-32.)

The HV Plaintiffs also alleged that after the TFC Trust became a 50% owner of HVTC, Christensen used his position and influence to "[make] additional legal and business

recommendations that caused HVTC to disburse additional funds to [Christensen] in total disregard for the financial health of HVTC and in breach of his fiduciary duties to HVTC." (*Id.* at ¶ 33.) The HV Complaint detailed four examples of such unethical behavior. First, Christensen allegedly encouraged the company to enter into a § 1031 Exchange Transaction for Christensen's personal residence at an inflated price, after which Christensen continued to live at the residence, rent free, until HVTC demanded rent payment. (*Id.* at ¶¶ 34-37.) Second, Christensen allegedly recommended HVTC purchase at an inflated price a property in Albuquerque, New Mexico owned by relatives or entities associated with an attorney employed at the Firm. (*Id.* at ¶¶ 39-41.) The Firm then allegedly utilized that property as a law office without a lease agreement. (*Id.* at ¶¶ 42-43.) Third, Christensen allegedly recommended that HVTC purchase an air conditioning and heating company owned by Christensen or entities controlled by his family members, representing the company was profitable and generating positive cash flow. (*Id.* at ¶¶ 45-47, 52.) However, within three months of HVTC's purchase Christensen requested a $100,000 capital infusion for the company due to cash flow problems. (*Id.* at ¶ 48.) Finally, Christensen allegedly used HVTC funds to make stock trades on the company's behalf that resulted in a near $700,000 loss. (*Id.* at ¶ 53.)

### C. This Action

On December 9, 2009, Plaintiffs reported the lawsuit to Darwin and requested coverage. By letter dated December 21, 2009, Darwin advised Christensen and the Firm that the Policy did not afford coverage for the lawsuit based on the allegations in the HV Complaint. Plaintiffs then filed this suit against Darwin on February 4, 2010, seeking reimbursement of costs associated with defending the suit that they were forced to bear when Darwin denied the claim.

## III.   DISCUSSION

### A. Legal Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable fact-finder could find for the nonmoving party; a dispute is "material" if it could affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995). In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party satisfies Rule 56's requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256. The nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bank of Am. v. Orr*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. Although the parties may submit evidence in an inadmissible form, the Court may consider only evidence which might be admissible at trial in ruling on a motion for summary judgment. Fed. R. Civ. P. 56(c).

**B. Analysis**

"Interpretation of unambiguous language in a contract is a pure question of law and appropriate for disposition by summary adjudication." *Capitol Indem. Corp. v. Blazer*, 51 F.

Supp. 2d 1080, 1083-84 (D. Nev. 1999). Insurance policies are contracts, and consequently, are enforced according to their terms to accomplish the intent of the parties. *Lumbermen's Underwriting Alliance v. RCR Plumbing, Inc.*, 969 P.2d 301, 304 (Nev. 1998). Nonetheless, insurance policies are interpreted "'from the viewpoint of one not trained in the law' or insurance." *McDaniel v. Sierra Health and Life Ins. Co.*, 53 P.3d 904, 906 (Nev. 2002) (quoting *Nat'l Union Fire Ins. v. Reno's Exec. Air*, 682 P.2d 1380, 1383 (Nev. 1984)). Where the provisions of a policy are clear and unambiguous, the Court must enforce them as written. *See Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003). However, where provisions are ambiguous, those provisions must be construed in favor of the insured. *Nat'l Union Fire*, 682 P.2d at 1383.

The Court finds that under the unambiguous terms of the Policy, Plaintiffs' claims are barred by the exclusions cited by Darwin. Primarily, the allegations in the HV Complaint arise from Christensen's and the Firm's business activities in two ways. First, as the HV Complaint alleges that Christensen sought to benefit the TFC Trust in purchasing a stake in HVTC and to benefit the Firm in the New Mexico Property transaction, Christensen was acting in a capacity as the trustee of the TFC Trust and an employee of the Firm in those transactions. Second, because the TFC Trust (of which Christensen was trustee) held a 50% interest in HVTC, all HVTC transactions Christensen influenced involved Christensen's capacity as a "shareholder"[2] of HVTC. Moreover, even though Christensen was purportedly acting as HVTC's lawyer in these actions as well, the "arising out of" and "in any way involving" language of the exclusion is sufficient to preclude from coverage claims arising out of transactions where an insured was acting in a dual capacity. In other words, even if Christensen was providing legal advice, the allegations in the HV Complaint nonetheless "arose out of" and "involved" Christensen's

---

[2] HVTC is an LLC, and hence, the TFC Trust is technically a member of HVTC as opposed to a shareholder. However, as the two terms denote ownership in a business enterprise, the Court determines that the Business Enterprise exclusion would similarly exclude coverage for claims arising out of actions relating to an Insured's capacity as a member of an LLC. The terminology of the Policy is used in this Order for clarity.

6

shareholder, trustee, and employee statuses as well. Such actions are unambiguously excluded from coverage under the Policy.

Similarly, Christensen's actions implicate the Trust Exclusion because the claims in the HV Complaint arose out of his acts in connection with the TFC Trust. Again, although Christensen may have been advising HVTC in a legal capacity, he also was seeking to benefit the TFC Trust in acquiring a stake in HVTC. After the acquisition, Christensen's continued business advice to HVTC was necessarily in connection with the TFC Trust because Christensen was the TFC Trust's trustee and the Trust owned 50% of HVTC. Moreover, Christensen was a beneficiary of the TFC Trust making his actions clearly fall within the ambit of the Trust Exclusion. Consequently, Christensen's actions are excluded from coverage under the Policy.

Finally, Christensen's encouragement of HVTC to acquire his personal home, the New Mexico Property, and the heating and air-conditioning company, as well as his stock purchases on HVTC's behalf, all fall within the Investment Advice Exclusion. Each of the actions involved Christensen advising the company to make a particular investment. Consequently, the claims arise out of Christensen's "rendering of investment advice, including advice . . . to make any investment." Such action is excluded from coverage by the unambiguous language of the Policy.

Plaintiffs, however, argue Darwin nonetheless breached its duties to Plaintiffs because the HV Complaint contains allegations of other instances of malpractice, separate and independent from those falling within the scope of the cited exclusions. (Dkt. #21 at 7:6-24.) Plaintiffs assert that the existence of these separate claims entitled them to coverage.[3] However, the Court does not agree that the HV Complaint details claims separate from those falling within the ambit of the exclusions.

Although Plaintiffs suggest the HV Complaint detailed several allegations which would not fall within the scope of an exclusion, the only specific example listed by Plaintiffs is that the misrepresentations Christensen allegedly made about the value of the HVTC property occurred

---

[3] It is unclear whether Plaintiffs argue that the separate claims entitled them to a defense of the whole action or whether they assert that coverage should be provided only for any liability found under the separate claims.

before the TFC Trust acquired an interest in HVTC. Plaintiffs argue that Christensen made these misrepresentations solely in capacity as counsel, and consequently, the exclusion cannot apply. However, this attempt to bifurcate the misrepresentations from the acquisition of HVTC is nonsensical. The implication of the HV Complaint's allegations is that the purpose of the misrepresentations was to acquire ownership in HVTC at a discounted cost. Thus, even though the TFC Trust did not own a portion of HVTC at the time of the initial misrepresentations, the allegations compel the conclusion that Christensen was pursing the advantage of the TFC Trust and hence, acting in his capacity of trustee. Consequently, both the Business Enterprise Exclusion and the Trust Exclusion preclude coverage for Christensen's initial misrepresentations.

Plaintiffs additionally assert that summary judgment is inappropriate because the breadth of the Trust and Investment Advice Exclusions renders the terms ambiguous. (*Id.* at 9:18-25.) The thrust of Plaintiffs' argument is that the exclusions are so broad as to swallow any coverage under the policy. Plaintiffs seek to illustrate their argument with two hypotheticals. First, Plaintiffs assert that under the Trust Exclusion, a lawyer's use of trust distributions to invest in his practice would be excluded from coverage. Second, Plaintiffs assert that under the Investment Advice Exclusion, a lawyer's providing advice on the tax consequences of an investment would similarly not qualify for coverage. Plaintiffs assert that the examples demonstrate that the sweeping application of the exclusions would preclude almost any coverage under the policy, and conclude that the terms must be found ambiguous.

Plaintiffs' arguments suffer from three critical deficiencies. First, Plaintiffs' hypotheticals, which are not relevant given the facts of this case, are also illogical. It is difficult to discern what sort of *legal malpractice* claim would arise from a lawyer's investment of trust distributions in his practice. Additionally, there is a significant difference between advising a client on the tax consequences of an investment, and urging a client to make or refrain from making a particular investment. As such, the hypotheticals are not useful to the Court's analysis.

Second, even considering Plaintiffs' hypotheticals, the exclusions are not so broad as to swallow all—or even most—coverage. The Trust Exclusion applies only where an Insured

provides legal advice in connection with a trust of which he or she is a beneficiary. Thus, the exclusion concerns a lawyer's conflict of interest. Similarly, the Investment Advice Exclusion concerns only situations in which a lawyer exceeds his or her role as a legal advisor by assuming the role of financial advisor as well. Plaintiffs' characterization of these exclusions as swallowing the general rule of coverage is grossly overstated. Moreover, parties are free to contract for broad exclusions resulting in narrow coverage. Plaintiffs have failed to demonstrate any ambiguity.

Finally, even if Plaintiffs had demonstrated ambiguity within the Trust and Investment Advice Exclusions, Plaintiffs nonetheless fail to demonstrate how the Business Enterprise Exclusion would not still preclude coverage. Plaintiffs fail to provide any legitimate reason not to apply the plain meaning of the contractual terms. Under the unambiguous language of the Policy, the allegations of the HV Complaint fall within the exclusions and are not entitled to coverage. Based on the undisputed facts, Darwin is entitled to judgment as a matter of law.

## IV.   CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Darwin National Assurance Company's Motion for Summary Judgment (Doc. # 20) is GRANTED. The Clerk of the Court is instructed to enter judgment in favor of Defendant.

DATED THIS 14th day of April 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE